# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| MARCO CAMACHO | ) | |
| | ) | Case No: |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Complaint for violation of Civil Rights |
| | ) | |
| DEPARTMENT OF HOMELAND SECURITY SPECIAL AGENT ANTHONY SABAINI, TASK FORCE OFFICER FERNANDO ZAMBRONO and YET UNKNOWN AND UNNAMED OFFICERS AND AGENTS. | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## JURISDICTION AND VENUE

1. This is a civil action brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

2. Venue is founded in this judicial court upon 28 U.S.C. Section 1391 as the acts complained of arose in this district.

## PARTIES

3. At all times herein mentioned, Plaintiff Marco Camacho (hereinafter "Plaintiff") was a resident of the State of Illinois.

4. On information and belief, Defendant Anthony Sabaini is a resident of the State of Illinois. At all relevant times hereto, Defendant Sabaini was a special agent of the Department of Homeland Security and part of the Homeland Security Investigations division. At all relevant times hereto, Defendant Sabaini was employed by the United States of America. Defendant Sabaini is being sued in his individual capacity.

1

5. On information and belief, Defendant Fernando Zambrano is a resident of the State of Illinois. At all relevant times hereto, Defendant Zambrano was a task force officer of the Department of Homeland Security and part of the Homeland Security Investigations division. At all relevant times hereto, Defendant Zambrano was employed by the United States of America. Defendant Zambrano is being sued in his individual capacity.

6. Unknown and unnamed Department of Homeland Security agents and officers working as part of the Homeland Security Investigations division, collectively with above-named Defendants ("hereinafter "Defendants"), and employed by the United States of America.

## FACTUAL ALLEGATIONS

7. Plaintiff has lived in the United States since 1985 and was a business owner from 1999 to the date of his arrest in this matter.

8. At all relevant times, Plaintiff was the owner of Marco's Wholesale, a car dealership located in Blue Island, Illinois.

9. At all relevant times, Defendants Sabaini and Zambrano were agents with the Homeland Security Investigations, Chicago Narcotics Group conducting an investigation related to wholesale narcotic distribution from the southwest border.

10. In or around December 2014, Defendants began utilizing information from three cooperating witnesses, CW1, CW2 and CW3.

11. CW1, CW2 and CW3 are family members who began assisting the Defendants in order to reduce a potential criminal sentence that CW3 faced in connection to Defendants' narcotics investigation. CW1 had twice previously been convicted of possession of controlled substances.

12. CW1, CW2, and CW3 were legitimate customers of Plaintiff's business, Marco's Wholesale, since 2007 and the cooperating witnesses had all purchased vehicles from Plaintiff on multiple occasions.

13. Upon information and belief, CW1, CW2, and CW3 falsely identified Plaintiff to Defendants as an individual involved in illegal activity in an attempt to help CW3 receive a reduced criminal sentence.

14. In or around April 2015, Defendants approached Plaintiff in a store parking lot and ordered him out of his vehicle.

15. Defendants had no legal cause or reasonable suspicion to detain Plaintiff.

16. Once Plaintiff complied and exited the vehicle, Defendants began badgering him in a threatening manner asking Plaintiff for a gun and claiming that they knew Plaintiff had a gun in his vehicle.

17. On that date, Plaintiff did not have a gun in his vehicle which is what he told Defendants.

18. Despite this, Defendants searched Plaintiff's vehicle.

19. Plaintiff did not consent to the search of his vehicle and Defendants did not have legal cause or reasonable suspicion to search Plaintiff's vehicle.

20. After failing to find any contraband, Defendants told Plaintiff that they would be in touch and left.

21. On or about April 21, 2015, Defendants ordered Plaintiff to come to the Department of Homeland Security field office in Oakbrook Terrace.

22. On or about April 22, 2015, Plaintiff went to the Department of Homeland Security field office in Oakbrook Terrace to meet with Defendants.

23. At that meeting Defendants told Plaintiff that he needed to provide them with evidence of drug crimes.

24. Plaintiff not understanding why he was being questioned by Department of Homeland Security agents and not understanding what exactly was being asked of him, told Defendants that he would first need to talk to an attorney.

25. After that meeting, Defendants began communicating threats to Plaintiff. For example, they threatened Plaintiff that he needed to "make something happen soon" and that he was "running out of time" and that if he did not make something happen soon, he would "go away" and they would "rip apart everything that you know as life."

26. Defendants over a period of months continued threatening Plaintiff in a manner similar to the aforementioned threats, mainly, telling him he needed to get evidence of drug crimes soon or they would ruin his life.

27. Plaintiff not having any information pertaining to drug sales or any other type of illegal activity, frantically attempted to comply with the Defendants threats by providing the Defendants with information about his customers from his legitimate business, Marco's Wholesale, in the hopes that these individuals could potentially lead Defendants to evidence of illegal activity.

28. Upon information and belief, the information Plaintiff provided to Defendants never brought the Defendants evidence of wholesale narcotic distribution that they were seeking.

29. Upon information and belief, during the course of their investigation Defendants became aware of the fact that Plaintiff was not involved in criminal activity as the cooperating witnesses claimed.

30. As a result of not being able to provide Defendants with evidence of wholesale narcotic distribution, Defendants decided to make good on their threats to ruin Plaintiff's life including by framing him for a crime they knew he did not commit.

31. On or about June 17, 2015 Plaintiff was arrested by Defendants. There was no legal cause for Plaintiff to be arrested.

32. Defendants manufactured and fabricated evidence against Plaintiff and falsified evidence in their reports, criminal complaints, affidavits and/or testimony rendered during the underlying criminal proceeding against Plaintiff.

33. On July 7, 2015, Plaintiff was indicted by a grand jury for conspiracy to possess with intent to distribute a quantity of cocaine in violation of United States Code, Section 846. Defendants knew that Plaintiff had not committed such a crime and that there was no legal cause for Plaintiff to be charged with the crime.

34. As a result of Defendants causing Plaintiff to be charged with a criminal offense, he was subjected to a legal process, criminal prosecution, pretrial detention, and a deprivation of liberty.

35. Defendants knew that Plaintiff's criminal prosecution, pretrial detention and deprivation of liberty was based solely upon the Defendants' fabricated evidence and falsified evidence in their reports, criminal complaints, affidavits and/or testimony and thus Defendants knew Plaintiff's prosecution, pretrial detention, and deprivation of liberty was not supported by probable cause.

36. All criminal charges against Plaintiff were dismissed on June 26, 2019 in Plaintiff's favor in a manner indicative of innocence.

37. Plaintiff was deprived of his liberty for a substantial length of time, almost four years, as a result of the acts of Defendants.

38. By reason of the above-described acts and omissions of Defendants, Plaintiff sustained injuries, including but not limited to, loss special damages, humiliation and indignities, and suffered great mental and emotional pain and suffering all to his damage in an amount to be ascertained.

39. The aforementioned acts of Defendants were willful, wanton, malicious, oppressive and done with reckless indifference to and/or callous disregard for Plaintiff's rights and justify the awarding of exemplary and punitive damages in an amount to be ascertained according to proof at the time of trial.

40. By reason of the above-described acts and omissions of Defendants, Plaintiff was required to retain an attorney to institute, prosecute and render legal assistance to him in the within action so that he might vindicate the loss and impairment of his rights. By reason thereof, Plaintiff requests payment by Defendants of a reasonable sum for attorney's fees.

**COUNT I**
**PLAINTIFF AGAINST ALL INDIVIDUAL KNOWN AND UNKNOWN DEFENDANTS**
**FOR VIOLATION OF HIS FOURTH AMENDMENT RIGHTS**
**THROUGH UNLAWFUL DETENTION**

41. Plaintiff hereby realleges in incorporates paragraphs one (1) through forty (40) as though fully set forth at this place.

42. The Defendants and each of them, known and unknown, subjected Plaintiff to criminal prosecution, a pretrial detention, and/or deprivation of his liberty without probable cause.

43. Defendants did not have probable cause to believe Plaintiff had committed an offense or cause him to be subjected to any pretrial restriction of his liberty.

44. Defendants knew that Plaintiff's arrest, detention, and criminal prosecution were based solely upon Defendants' false allegations that Plaintiff conspired to possess with intent to distribute a controlled substance.

45. In engaging in the conduct described above, the Defendants did not disclose evidence and/or facts that would show that Plaintiff did not conspire to possess and/or distribute a controlled substance.

46. Further in violation of Plaintiff's Fourth Amendment rights, Defendants also manufactured and fabricated evidence, falsified testimony, falsified police reports, and arrested him in retaliation for Plaintiff being unable to provide them with information about criminal activity.

47. All criminal charges initiated by Defendants against Plaintiff were terminated in his favor in a manner indicative of innocence on June 26, 2019.

48. By reason of the conduct of Defendants and each of them, Plaintiff was deprived of rights, privileges and immunities, secured to him by the Fourth Amendment to the Constitution of the United States and laws enacted thereunder.

49. The foregoing was unnecessary and unreasonable and was therefore in violation of Plaintiff's Fourth Amendment rights. Therefore, Defendants in their individual capacity, are liable to Plaintiff.

## COUNT II
**PLAINTIFF AGAINST ALL INDIVIDUAL DEFENDANTS KNOWN AND UNKNOWN FOR CONSPIRACY TO VIOLATE PLAINTIFF'S FOURTH AMENDMENT RIGHTS THROUGH UNLAWFUL DETENTION**

50. Plaintiff hereby realleges in incorporates paragraphs one (1) through forty (40) as though fully set forth at this place.

51. Upon information and belief, the individual Defendants and each of them, as well as the other unknown and unnamed agents and officers of the Department of Homeland Security, formed an agreement to deprive Plaintiff of his due process, and liberty rights by agreeing to frame Plaintiff for a criminal offense by unlawful means, and in furtherance of that agreement, manufactured and fabricated evidence and falsified reports, authored and swore to affidavits they knew to be false, provided false testimony, and/or authored false criminal complaints.

52. By reason of the conduct of Defendants and each of them, Plaintiff was deprived of rights, privileges and immunities, secured to him by the Fourth Amendment to the Constitution of the United States and laws enacted thereunder.

53. Subsequent to his arrest, Plaintiff was continually detained without probable cause in violation of his Fourth Amendment Rights.

54. Further in violation of the Plaintiff's Fourth Amendment rights, Defendants manufactured, planted, and fabricated evidence and falsified reports.

55. The foregoing was unnecessary and unreasonable and was therefore in violation of Plaintiff's Fourth Amendment rights. Therefore, the Defendants are liable to Plaintiff.

**WHEREFORE**, the Plaintiff, by and through his attorneys, ED FOX & ASSOCIATES, requests judgment as follows against the Defendants, and each of them:

1. That the Defendants be required to pay Plaintiff's general damages, including emotional distress, in a sum to be ascertained;

2. That the Defendants be required to pay Plaintiff's special damages;

3. That the Defendants be required to pay Plaintiff's attorneys fees;

4. That the Defendants be required to pay punitive and exemplary damages in a sum to be ascertained;

5.      That the Defendants be required to pay Plaintiff's costs of the suit herein incurred; and

6.      That Plaintiff has such other and further relief as this Court may deem just and proper.

BY:    s/ Jaclyn N. Diaz
ED FOX & ASSOCIATES
Attorneys for Plaintiff
300 West Adams
Suite 330
Chicago, Illinois 60606
(312) 345-8877
jdiaz@efoxlaw.com

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY**

BY:    s/Jaclyn N. Diaz
ED FOX & ASSOCIATES
Attorneys for Plaintiff
300 West Adams
Suite 330
Chicago, Illinois 60606
(312) 345-8877
jdiaz@efoxlaw.com